AO 472 (Rev. 11/16; DC 1/19) Order of Detention

# UNITED STATES DISTRICT COURT

for the

District of Columbia

| | |
|---|---|
| United States of America | ) |
| v. | ) |
| Sai Kandula | )  Case No.    23-mj-153 |
| | ) |
| _Defendant_ | ) |

## ORDER OF DETENTION PENDING TRIAL

### Part I - Eligibility for Detention

Upon the

☑ Motion of the Government attorney pursuant to 18 U.S.C. § 3142(f)(1), or

❒ Motion of the Government or Court's own motion pursuant to 18 U.S.C. § 3142(f)(2),

the Court held a detention hearing and found that detention is warranted. This order sets forth the Court's findings of fact and conclusions of law, as required by 18 U.S.C. § 3142(i), in addition to any other findings made at the hearing.

### Part II - Findings of Fact and Law as to Presumptions under § 3142(e)

❒ **A. Rebuttable Presumption Arises Under 18 U.S.C. § 3142(e)(2)** _(previous violator)_: There is a rebuttable presumption that no condition or combination of conditions will reasonably assure the safety of any other person and the community because the following conditions have been met:

  ❒ **(1)** the defendant is charged with one of the following crimes described in 18 U.S.C. § 3142(f)(1):

  ❒ **(a)** a crime of violence, a violation of 18 U.S.C. § 1591, or an offense listed in 18 U.S.C. § 2332b(g)(5)(B) for which a maximum term of imprisonment of 10 years or more is prescribed; **or**

  ❒ **(b)** an offense for which the maximum sentence is life imprisonment or death; **or**

  ❒ **(c)** an offense for which a maximum term of imprisonment of 10 years or more is prescribed in the Controlled Substances Act (21 U.S.C. §§ 801-904), the Controlled Substances Import and Export Act (21 U.S.C. §§ 951-971), or Chapter 705 of Title 46, U.S.C. (46 U.S.C. §§ 70501-70508); **or**

  ❒ **(d)** any felony if such person has been convicted of two or more offenses described in subparagraphs (a) through (c) of this paragraph, or two or more State or local offenses that would have been offenses described in subparagraphs (a) through (c) of this paragraph if a circumstance giving rise to Federal jurisdiction had existed, or a combination of such offenses; **or**

  ❒ **(e)** any felony that is not otherwise a crime of violence but involves:

  **(i)** a minor victim; **(ii)** the possession of a firearm or destructive device (as defined in 18 U.S.C. § 921); **(iii)** any other dangerous weapon; or **(iv)** a failure to register under 18 U.S.C. § 2250; _and_

  ❒ **(2)** the defendant has previously been convicted of a Federal offense that is described in 18 U.S.C. § 3142(f)(1), or of a State or local offense that would have been such an offense if a circumstance giving rise to Federal jurisdiction had existed; _and_

  ❒ **(3)** the offense described in paragraph (2) above for which the defendant has been convicted was committed while the defendant was on release pending trial for a Federal, State, or local offense; **_and_**

  ❒ **(4)** a period of not more than five years has elapsed since the date of conviction, or the release of the defendant from imprisonment, for the offense described in paragraph (2) above, whichever is later.

AO 472 (Rev. 11/16; DC 1/19) Order of Detention

☑ **B. Rebuttable Presumption Arises Under 18 U.S.C. § 3142(e)(3)** *(narcotics, firearm, other offenses)*: There is a rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of the defendant as required and the safety of the community because there is probable cause to believe that the defendant committed one or more of the following offenses:

    ❒ **(1)** an offense for which a maximum term of imprisonment of 10 years or more is prescribed in the Controlled Substances Act (21 U.S.C. §§ 801-904), the Controlled Substances Import and Export Act (21 U.S.C. §§ 951-971), or Chapter 705 of Title 46, U.S.C. (46 U.S.C. §§ 70501-70508);

    ❒ **(2)** an offense under 18 U.S.C. §§ 924(c), 956(a), or 2332b;

    ☑ **(3)** an offense listed in 18 U.S.C. § 2332b(g)(5)(B) for which a maximum term of imprisonment of 10 years or more is prescribed;

    ❒ **(4)** an offense under Chapter 77 of Title 18, U.S.C. (18 U.S.C. §§ 1581-1597) for which a maximum term of imprisonment of 20 years or more is prescribed; **or**

    ❒ **(5)** an offense involving a minor victim under 18 U.S.C. §§ 1201, 1591, 2241, 2242, 2244(a)(1), 2245, 2251, 2251A, 2252(a)(1), 2252(a)(2), 2252(a)(3), 2252A(a)(1), 2252A(a)(2), 2252A(a)(3), 2252A(a)(4), 2260, 2421, 2422, 2423, or 2425.

❒ **C. Conclusions Regarding Applicability of Any Presumption Established Above**

    ☑ The defendant has not introduced sufficient evidence to rebut the presumption above, and detention is ordered on that basis, with the evidence or argument presented by the defendant summarized in Part III.C.

    ❒ The defendant has presented evidence sufficient to rebut the presumption, but after considering the presumption and the other factors discussed below, detention is warranted for the reasons summarized in Part III.

      **OR**

    ❒ The defendant has not presented sufficient evidence to rebut the presumption. Moreover, after considering the presumption and the other factors discussed below, detention is warranted for the reasons summarized in Part III.

### Part III - Analysis and Statement of the Reasons for Detention

**A.** After considering the factors set forth in 18 U.S.C. § 3142(g) and the information presented at the detention hearing, the Court concludes that the defendant must be detained pending trial because the Government has proven:

    ☑ By clear and convincing evidence that no condition or combination of conditions of release will reasonably assure the safety of any other person and the community.

    ❒ By a preponderance of evidence that no condition or combination of conditions of release will reasonably assure the defendant's appearance as required.

**B.** In addition to any findings made on the record at the hearing, the reasons for detention include the following:

    ☑ Weight of evidence against the defendant is strong

    ☑ Subject to lengthy period of incarceration if convicted

    ❒ Prior criminal history

    ❒ Participation in criminal activity while on probation, parole, or supervision

❏ History of violence or use of weapons
❏ History of alcohol or substance abuse
❏ Lack of stable employment
❏ Lack of stable residence
❏ Lack of financially responsible sureties
❏ Lack of significant community or family ties to this district
❏ Significant family or other ties outside the United States
❏ Lack of legal status in the United States
❏ Subject to removal or deportation after serving any period of incarceration
❏ Prior failure to appear in court as ordered
❏ Prior attempt(s) to evade law enforcement
❏ Use of alias(es) or false documents
❏ Background information unknown or unverified
❏ Prior violations of probation, parole, or supervised release

## C.  OTHER REASONS OR FURTHER EXPLANATION:

The defendant's evidence/arguments for release:

See Attachments

Nature and circumstances of offense:

See Attachments

The strength of the government's evidence:

See Attachments

AO 472 (Rev. 11/16; DC 1/19) Order of Detention

The defendant's history and characteristics, including criminal history:

   See Attachments

The defendant's dangerousness/risk of flight:

   See Attachments

## Part IV - Directions Regarding Detention

The defendant is remanded to the custody of the Attorney General or to the Attorney General's designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal. The defendant must be afforded a reasonable opportunity for private consultation with defense counsel. On order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility must deliver the defendant to a United States Marshal for the purpose of an appearance in connection with a court proceeding.

Date:     June 9, 2023
                                       MOXILA A. UPADHYAYA
                                       United States Magistrate Judge

## Attachment A[1]

**PROCEDURAL HISTORY**

On May 23, 2023, the government filed a complaint charging Defendant Sai Kandula with one count of Depredation of Property of the United States where the Damage Exceeds $1000, in violation of 18 U.S.C. § 1361. Kandula appeared for his initial appearance on May 24, 2023. The Court held Kandula's detention hearing on June 9, 2023.

Kandula conceded that this case carries a rebuttable presumption under the Bail Reform Act ("BRA"), 18 U.S.C. § 3142, that no condition or combination of conditions would reasonably assure the safety of the community and the appearance of Kandula as required. The presumption applied here under 18 U.S.C. § 3142(e)(3)(C), as the offense Kandula is charged with is listed in 18 U.S.C. § 2332b(5)(B), and for which a maximum term of imprisonment of ten years or more is prescribed. For the reasons set forth below, the Court granted the government's motion for detention.

**KANDULA'S ARGUMENT FOR RELEASE**

Kandula argued that he rebutted the presumption of detention with evidence of: (1) his close family ties; (2) absence of a criminal history; and (3) the lack of allegations of violence in the underlying complaint. Furthermore, Kandula argued that the Court could set stringent conditions of release that would reasonably assure his appearance at future proceedings and the safety of the community. Specifically, Kandula proposed home confinement with GPS monitoring and proposed that his parents serve as his third-party custodians. At the time of the alleged offense, Kandula resided with his parents and sibling in Missouri, so Kandula proposed that his supervision be transferred to the Eastern District of Missouri.

Kandula also argued that the government failed to show by a preponderance of the evidence that he posed a serious risk of flight. Kandula claimed that his age, absence of a criminal history, lack of a passport, and length of time he has lived with his family in the United States all reflect that he is not a serious risk of flight.

**NATURE AND CIRCUMSTANCES OF THE OFFENSE**

The nature and circumstances of the alleged underlying offense weigh strongly in favor of detention. As noted above, Kandula is charged with Depredation of Property where the Damage Exceeds $1000, under 18 U.S.C. § 1361 for which a sentence of up to ten years is prescribed. Kandula faces a possible terrorism-related enhancement under 18 U.S.C. § 2332b. The Court reviewed video footage of the incident which the government provided at the hearing.

By way of proffer, the government alleged that, on May 22, 2023, Kandula bought a one-way airplane ticket, flew from St. Louis, Missouri to Dulles airport, rented a U-Haul, and drove to Lafayette Park, which is directly adjacent to the White House. Once there, Kandula rammed into

---

[1]  The Court will issue an addendum to this Order, including an additional proffer the government made during the hearing under seal.

protective barriers located on the perimeter of the park.  After his initial attempt failed, Kandula reversed the U-Haul and then accelerated into the barriers a second time.  In the process, Kandula nearly struck at least two pedestrians.  After his second attempt failed, Kandula exited the vehicle and removed a red and white flag with a Nazi Swastika from his backpack.  Law enforcement immediately detained him.  At the scene, Kandula indicated that he was trying to get into the White House to "seize power and be put in charge of the nation."  Kandula told officers that he would "kill the President if that's what I have to do and would hurt anyone that would stand in the way." On the scene, officers recovered a book containing Kandula's writings, referred to as the "Green Book," which included a purported speech that Kandula would give once he had seized power. Kandula expressed his desire to officers for his Green Book to be widely disseminated to the public.  Additionally, he stated that "either way, whether I got into the White House or not, my message was received."  When officers asked about his Nazi flag, Kandula responded that the "Nazi's have a great history" and expressed admiration for Adolf Hitler "because he was a strong leader."  Kanula also admitted to officers that he had planned this attack for six months.

This is not a nonviolent destruction of property case.  The video footage of the event reflects that Kandula drove with complete disregard to pedestrians, at least two of which were almost physically hit when he rammed into the perimeter of the park.  The fact that he reversed and tried a second time to hit the barrier only underscores the dangerousness of his conduct.  Moreover, it is clear that he intended to go further and possibly harm additional individuals if he were not stopped.

## WEIGHT OF THE GOVERNMENT'S EVIDENCE

The weight of the evidence is strong and also weighs in favor of detention.  As noted above, the Court viewed video footage of the incident reflecting Kandula's participation in the alleged conduct.  In addition, Kandula's plans as reflected in his Green Book reflect admissions that he intended or at a minimum wished to do further harm that evening.  The government also presented evidence that Kandula traveled from St. Louis on a one-way ticket to carry out the attack.

## HISTORY AND CHARACTERISTICS/RISK OF FLIGHT

This factor does not weigh as strongly in favor of detention.  Kandula is a young man with no criminal history.  In arguing for detention as to Kandula's history and characteristics, the thrust of the government's argument was that Kandula posed a serious risk of flight.  The government noted that Kandula has no ties to the local community and is facing the prospect of removal from the United States.  Moreover, the government raised that Kandula is facing a potentially significant sentence if he is convicted, providing him with the incentive to leave the country.  Although the government did not offer any direct evidence that Kandula intended to flee, the government pointed out that Kandula has family in India, some of whom he has previously visited.  Defense counsel responded that Kandula is only 19 years old and is a lawful permanent resident who lives with his family in Missouri.  Further, he has no criminal history.  In addition, after his arrest in this case, officers seized Kandula's Indian passport.

The government failed to show by a preponderance of the evidence that Kandula is a serious risk of flight.   Without more, Kandula's prospective immigration status and potential significant sentence upon conviction are insufficient to establish a serious risk of flight.

## DANGER TO THE COMMUNITY

This factor weighs strongly in favor of detention.   Over the course of six months, Kandula meticulously planned his assault on the White House.   He purchased a one-way ticket to travel across the country, rented a large truck, and rammed into protective barriers in an attempt to gain access to the White House.   As noted above, his behavior on that night was dangerous, nearly causing serious injury to bystanders.   Moreover, Kandula's thoughts as set forth in the Green Book reflected that he wished to further harm a number of individuals and use violence to achieve his ideals.   If his violent thoughts were confined to his writing, the inquiry would be different.   Here, however, he acted in a violent manner consistent with his ideology and writings, going to great lengths (traveling from Missouri) to do so.

As the Court noted on the record, the dangerousness analysis under the BRA is a "specific, forward-looking assessment of whether [an individual] currently pose[s] an unmitigable threat to public safety."   *United States v. Munchel*, 991 F.3d 1273, 1286 (D.C. Cir. 2021) (Katsas, J., concurring).   Here, the disturbing allegations set forth in the complaint, Kandula's writings, and the content of the government's additional allegations made under seal, reflect that he presents an ongoing danger to the community.   Indeed, Kandula's proposed release conditions were insufficient to satisfy the Court otherwise.   His proposal for home confinement with GPS monitoring and for his parents to serve as third party custodians was untenable.   Kandula allegedly committed these acts while he lived with parents.   Moreover, the government's allegations made under seal reflect that no conditions of release proposed would have been sufficient to mitigate danger to certain individuals.   The Court will fully explain its reasoning in the sealed addendum to this Order.

For these reasons, the Court ordered that Kandula be held pending trial.